Julia Campins (SBN 238023)
Hillary Benham-Baker (SBN 265019)
CAMPINS BENHAM-BAKER
935 Moraga Road, Suite 200
Lafayette, CA 94549
Tel: (415) 373-5333
Fax: (415) 373-5334
julia@campinsbenhambaker.com
hillary@campinsbenhambaker.com

Attorneys for Plaintiff JAMES WILLIAMS

Jessica Tankersley Sparks (SBN 258774)
PROJECT SENTINEL
1490 El Camino Real
Santa Clara, CA 95050
Tel: (408) 470-3746
Fax: (408) 216-9968
jsparks@housing.org

Attorney for Plaintiff PROJECT SENTINEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILLIAMS and PROJECT SENTINEL, a California non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHERN SUNCREST APARTMENTS, LLC, a California limited liability corporation; JAMES WU; JOE TAI-CHANG WU; and ALEX GUMAYAGAY,<br><br>Defendants. | Case No. 17-cv-3512<br><br>**COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF; JURY TRIAL DEMAND** |

- 1 -

## INTRODUCTION

1. This is a fair housing case in which Plaintiffs Project Sentinel, a non-profit community fair housing organization, and James Williams allege that Defendants Northern Suncrest Apartments, LLC, James Wu, Joe Tai-Chang Wu, and Alex Gumayagay discriminated on the basis of disability and familial status. Plaintiffs allege Defendants engaged in a pattern and practice of systemic discrimination against families with children and people with disabilities, including refusing to rent or otherwise making housing unavailable, making discriminatory statements, imposing different terms and conditions, steering, and refusing to make reasonable modifications.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3. Venue and intra-district assignment are proper in that the Defendants' principal place of business is in San Jose, California.

## PARTIES

4. Plaintiff Project Sentinel is a non-profit fair housing organization incorporated under the laws of the State of California with its principal place of business in Santa Clara, California and an office in Modesto, California. Project Sentinel was founded in 1971 to assist individuals with housing problems, including housing discrimination. Project Sentinel's organizational mission includes the promotion of equal opportunity in rental housing and the elimination of all forms of housing discrimination. Project Sentinel engages in several different activities to further its mission of promoting equal housing opportunities, including providing community education and outreach programs regarding fair housing, conducting training programs for housing industry professionals, and providing fair housing counseling and referral services.

5. Plaintiff James Williams is a resident of Modesto, California.

6. Defendant Northern Suncrest Apartments, a California limited liability corporation ("LLC"), owns the 173-unit residential rental property at 620 Paradise Road in Modesto, California ("Suncrest Apartments or "subject property"). Defendants James ("Jim") Wu and Joe Tai-Chang Wu own and manage Suncrest Apartments through Northern Suncrest Apartments LLC. Defendant Alex Gumayagay is the resident manager at Suncrest Apartments.

7. Each Defendant was, in doing the things complained of, the agent of its co-Defendants herein and acting within the scope of said agency and/or representation, and each Defendant is jointly and severally responsible and liable to Plaintiffs for the damages alleged.

## FACTS

### *Mr. Williams' Attempt to Rent the Premises*

8. Plaintiff James Williams is a physically disabled veteran who is the beneficiary of a housing choice voucher from the U.S. Department of Housing and Urban Development, Veterans Affairs Supportive Housing program ("HUD-VASH"). As a result of his disability, Mr. Williams relies on mobility assistance devices, including a cane and a motorized scooter.

9. In September 2015, Mr. Williams was homeless. Mr. Williams' HUD-VASH caseworker recommended he inquire about available housing at Suncrest Apartments, given the affordable pricing. Around September 29, 2015, Mr. Williams visited Suncrest Apartments in person, spoke with an unidentified woman about unit availability and the application process, toured approximately three or four available units, and procured an application.

10. On September 30, 2015, Mr. Williams paid a credit check fee and submitted a completed application for apartment unit at Suncrest Apartments.

11. Approximately one or two days later, around October 1 or October 2, 2015, Mr. Williams received a phone call from a woman representing Suncrest Apartments notifying him that his application to rent had been approved and instructing him to come to the subject property to select from the available units.

12. Around October 2 or October 3, 2015, Mr. Williams returned to the subject property to view the units available for him to choose from. An unidentified woman introduced Mr. Williams to a man she referred to as the maintenance man, who then led Mr. Williams on a tour of two available units. Mr. Williams mentioned he had difficulty climbing stairs and needed a first floor unit. The man showed Mr. Williams a home on the back side of the parking lot, with a parking spot right outside the door. Mr. Williams determined the home was a good fit for his needs, in large part because its proximity to the parking lot would help mitigate the effects of his mobility impairment. While touring units, Mr. Williams also mentioned to the man that he would need to install a grab bar in the bathroom due to his disability.

13. Approximately one day later, around October 4, 2015, Mr. Williams received a phone call from a man who identified himself as the manager at Suncrest Apartments. The manager told Mr. Williams that Suncrest Apartments was constructed in the 1950s and not ADA compliant. The manager said Defendants did not want the hassle of Mr. Williams getting injured. Mr. Williams reiterated his interest in renting the unit. The manager told Mr. Williams he would have to run it by his superiors.

14. Approximately two days later, around October 6, 2015, Mr. Williams received a call from another unidentified person on behalf of Defendants, stating the manager had denied his application and he was no longer eligible to rent from Suncrest Apartments. Even though Mr. Williams was initially approved to rent, that approval was rescinded after he disclosed his need for a disability-related modification.

15. On October 12, 2015, Mr. Williams made a complaint of disability discrimination to Project Sentinel. As a result, Project Sentinel initiated an investigation into Defendants' practices with respect to disability discrimination.

### *Project Sentinel's Investigation*

16. Prior to receiving Mr. Williams' complaint of disability discrimination, Project Sentinel had already initiated an investigation into familial status discrimination at Suncrest Apartments. On September 2, 2015, Project Sentinel received a complaint about Suncrest

Apartments from a tenant who alleged Defendants employed overly restrictive rules regarding children at the subject property. Upon review, Project Sentinel determined the tenant's lease included provisions expressly prohibiting juvenile gatherings outside without adult supervision, riding bicycles, or pushing baby carriages across the sidewalks. Most significantly, the lease also prohibited children under 12 from using the community grounds without adult supervision, and barred children of any age from playing in garden or fenced areas in the common space.

17. In a letter to Defendant James Wu dated September 14, 2015, Project Sentinel relayed the tenant's allegations that since 2014, property managers at Suncrest Apartments prohibited children from playing outside. Project Sentinel explained the scope of fair housing protections for families with children, identified discriminatory lease terms and rental practices, and requested Defendants comply with fair housing laws by rescinding those terms and practices.

18. Defendant Joe Wu, who identified himself as the Property Manager, subsequently responded to Project Sentinel in an email dated September 15, 2015. Mr. Wu reiterated that children were prohibited from playing at the subject property, suggesting instead that children play at an adjacent park. Mr. Wu attached selected daily security guard reports which referred to children playing with balls, making noise, and climbing trees, and made note of guards confiscating children's soccer balls.

19. On October 12, 2015, Project Sentinel received Plaintiff James Williams' unrelated complaint of discrimination at Suncrest Apartments. In response to Mr. Williams' allegations, Project Sentinel tested for disability discrimination. Between October 16, 2015 and December 2, 2015, Project Sentinel conducted three phone test parts, in which testers with and without disabilities inquired about renting at the subject property. Testing resulted in evidence of differential treatment based on disability, including refusal to permit reasonable modifications for people with disabilities.

20. On October 16, 2015 at 10:54 a.m., Tester 1, posing as a person with disabilities, called Suncrest Apartments and spoke with a woman who identified herself as "Elena." Elena stated second-floor units were available for $550 per month in rent. Tester 1 asked Elena whether he could

install grab bars in the shower. Elena initially declined to answer, telling the tester she would need to speak with maintenance; when the tester phoned back for a definitive answer, Elena responded that the manager said grab bars cannot be installed because the walls are not strong enough and it was an old building.

21. On October 19, 2015 at 1:45 p.m., Tester 2, a person without disabilities, phoned Suncrest Apartments and spoke with a woman named Denise. Denise confirmed there were one-bedroom units available for $550 monthly rent and encouraged the tester to act quickly, since the units were renting fast. Denise then provided the tester with information regarding rental terms and conditions, the application process, and scheduling a time to view a unit.

22. On November 9, 2015 at 10:26 a.m., Tester 3, a disabled wheelchair user, phoned Suncrest Apartments to inquire about one-bedroom units. Tester 3 spoke with Elena, disclosed that he was in a wheelchair, and asked about installing a chairlift at no cost to the property owners. Elena replied that probably would not be allowed, and there were not any elevators. She said the complex is old, the sidewalks are small and unsafe, and it is not accessible for the handicapped. Tester 3 then asked about the width of the doorways and whether he could use grant funds to have the doorways widened to improve access. Elena replied that probably would not be allowed, either. Tester 3 asked about grab bars in the shower. Elena responded she had been told to say no to installation by the manager when asked about that question, as it had come up in the past. Tester 3 then asked whether any downstairs units were vacant, regardless of the number of bedrooms. Elena said there were no vacant ground floor units, but there were 40 vacant upstairs units ranging from one to three-bedrooms, and the one-bedroom unit rented for $575 per month.

23. Project Sentinel further investigated by surveying residents at Suncrest Apartments. Between February 10, 2016 and April 10, 2016, Project Sentinel spoke with more than forty residents at the subject property who reported that rules prohibit children from playing with balls, skates, and bikes outside. Tenants also reported Defendants regularly confiscate children's toys and bikes, deflate balls with knives, and yell at children.

24. Between July 2016 and October 2016, Project Sentinel conducted additional interviews with two other families with children, both of whom reported intimidation, harassment, and overly restrictive rules based on familial status. For example, one woman said Defendants threatened to take her granddaughter's bicycle away, and confirmed reports that Defendants' security guards used knives to pop children's balls. Another woman described several incidents when security guards confiscated children's balls and bikes.

25. Project Sentinel also visited the public park adjacent to Suncrest Apartments, which Defendants repeatedly suggested as a location for children to play in lieu of using the common area at the subject property. There, Project Sentinel documented barbed wire fencing, clusters of people loitering around a transient encampment, unleashed dogs, and multiple used hypodermic syringes on the ground.

26. On October 14, 2016, Project Sentinel received a complaint from a woman with four young children who alleged Defendants unlawfully discriminated against her based on familial status by refusing to rent, making discriminatory statements, and steering her to a ground-floor unit. Project Sentinel extensively counseled the prospective tenant, investigated her complaint, and subsequently assisted her in preparing an administrative complaint which was filed with HUD.

*Injuries*

27. Defendants have engaged in a pattern or practice of discrimination against families with children. Defendants have pursued this pattern or practice of discrimination based on familial status for the purpose or with the effect of preventing families with children from residing at the subject property and from enjoying equal use and enjoyment of the subject premises. Defendants continue to engage in such a pattern, practice, or policy of discrimination so as to constitute a continuing violation.

28. As a result of the unlawful housing practices of Defendants as alleged herein, Project Sentinel suffered actual damages through diversion of its resources and frustration of its mission, in an amount to be proven at trial. Diversion of resources damages compensate a non-profit organization for the time and money diverted away from its ordinary work because the organization

instead engaged in work resulting from the discrimination caused by the defendants. Frustration of mission damages are awarded for the costs of future activities, such as training, monitoring, and outreach, that an organization must undertake to counteract the defendants' harm to the organization's mission.

29. Project Sentinel experienced a concrete and demonstrable injury to its activities – with the consequent drain on its scarce resources – that constituted far more than a simple setback to its abstract social interests. To achieve its mission, Project Sentinel provides, among other services, outreach and education to the community regarding fair housing, primarily in the form of counseling. Defendants' discriminatory practices perceptibly impaired Project Sentinel's ability to provide counseling and referral services for home seekers by requiring it to instead devote resources to specific activities and programs to counteract Defendants' discriminatory housing practices. As a result of Defendants' discriminatory activities, Project Sentinel was forced to invest significant financial and staff resources into investigating the subject property, including conducting tests, surveys, interviews, and extensive advocacy efforts. The time and money invested in testing, surveying, and otherwise investigating the subject property resulted in a diversion of resources from Project Sentinel's other activities. Defendants' discriminatory conduct forced Project Sentinel to divert its scarce resources away from other programs and activities it would have undertaken, such as counseling and referral, educational programs, and outreach, to instead identify and counteract Defendants' unlawful housing practices. Accordingly, Project Sentinel is entitled to its diversion of resources damages.

30. Defendants' discriminatory practices also harmed Project Sentinel by impairing and frustrating its mission of identifying and eliminating discriminatory practices against people in protected classes. As a result of Defendants' discriminatory conduct, Project Sentinel made substantial efforts and expended considerable resources to ensure equal housing opportunities for people with disabilities and families with children in the City of Modesto. Project Sentinel incurred frustration of mission damages through disseminating literature aimed at redressing the impact of Defendants' discrimination on the Modesto housing market and conducting an outreach event at a

nearby park to provide fair housing education to families with children most likely to be affected by Defendants' discriminatory conduct. To curtail Defendants' discriminatory practices and counteract the effects of these practices in the community, Project Sentinel will need to invest significant resources into monitoring the subject property and undertaking education and outreach efforts. Specifically, Project Sentinel must conduct regular tests to monitor the property and ensure that Defendants no longer discriminate against families with children or people with disabilities. Further, Project Sentinel must monitor the property by conducting a site survey to interview tenants to determine the demographic composition of the complex, identify whether any families with children have moved in to upper-level units, and assess whether any families with children have experienced discrimination at the complex. Project Sentinel must also train Defendants on fair housing laws. The time and money required to monitor the subject property and conduct outreach and education constitute Project Sentinel's frustration of mission damages. Accordingly, Project Sentinel is entitled to compensatory damages.

31. By reason of Defendants' unlawful acts and practices, Plaintiff James Williams suffered humiliation, embarrassment, emotional and mental distress, economic loss, and deprivation of his right to equal housing opportunities regardless of his disabilities.

32. In doing the acts of which Plaintiffs complain, Defendants acted with oppression, fraud and malice, and with wanton and conscious disregard of the rights of Plaintiffs. Further, as a result of Defendants' past interactions with Project Sentinel, Defendants were aware of their obligations to comply with federal and state fair housing laws. Accordingly, Plaintiffs Project Sentinel and James Williams are entitled to punitive damages.

33. There now exists an actual controversy between the parties regarding Defendants' duties under federal and state fair housing laws. Accordingly, Plaintiffs are entitled to declaratory relief.

34. Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern, practice, or policy of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts

and their pattern or practice of discrimination unless relief is provided by this Court. Accordingly, Plaintiffs are entitled to injunctive relief.

## CLAIMS

## FIRST CLAIM FOR RELIEF

[Fair Housing Act]

*42 U.S.C. § 3601 et seq.*

35. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

36. Defendants injured Plaintiffs in violation of the federal Fair Housing Act by committing the following discriminatory housing practices:

   a. Discriminatory refusal to rent or otherwise making housing unavailable on the basis of disability, in violation of 42 U.S.C. § 3604(f)(1);

   b. Statements and notices that indicate a preference, limitation, or discrimination on the basis of disability, in violation of 42 U.S.C. § 3604(c);

   c. Discriminatory terms, conditions, privileges, or services on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2); and

   d. Failing to make reasonable accommodations or modifications, in violation of 42 U.S.C. § 3604(f)(3)(B).

37. Defendants injured Plaintiffs in violation of the regulations implementing the Fair Housing Act by committing the following discriminatory housing practices:

   a. Refusing to rent or negotiate for rental of a dwelling because of disability, in violation of 24 C.F.R. § 100.60(b)(2);

   b. Refusing to permit a reasonable modification of existing premises to be occupied by an individual with a disability when necessary to afford the individual full enjoyment of the premises, in violation of 24 C.F.R. § 100.203(a);

  c. Making a statement with respect to the rental of a dwelling unit that indicates preference, limitation or discrimination based on disability, or an intention to make such a preference, limitation or discrimination, in violation of 24 C.F.R. § 100.75(a); and

  d. Discouraging the rental of a dwelling because of disability by exaggerating drawbacks of a dwelling, in violation of 24 C.F.R. § 100.70(c)(2).

## SECOND CLAIM FOR RELIEF

[Fair Housing Act]

*42 U.S.C. § 3601 et seq.*

(Plaintiff Project Sentinel)

38. Plaintiff Project Sentinel realleges and incorporates by reference each paragraph previously alleged in this complaint.

39. Defendants injured Plaintiff Project Sentinel in violation of the federal Fair Housing Act by committing the following discriminatory housing practices:

  a. Refusing to rent or otherwise making unavailable dwellings because of familial status, in violation of 42 U.S.C. § 3604(a);

  b. Making statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status or an intention to make any such preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c); and

  c. Representing because of familial status that a dwelling is not available for inspection or rental when such dwelling is in fact available, in violation of 42 U.S.C. § 3604(d).

40. Defendants injured Plaintiff Project Sentinel in violation of the regulations implementing the Fair Housing Act by committing the following discriminatory housing practices:

  a. Refusing to rent a dwelling or to negotiate for the rental of a dwelling based on familial status, in violation of 24 C.F.R. § 100.60(b)(2);

b.  Using different qualification criteria, rental standards or procedures, rental approval procedures or other requirements because of familial status, in violation of 24 C.F.R. § 100.60(b)(4);

c.  Engaging in any conduct relating to the provision of housing that otherwise makes unavailable or denies dwellings because of familial status, in violation of 24 C.F.R. § 100.70(b);

d.  Using words to convey that dwellings are available or not available to a particular group of persons because of familial status, in violation of 24 C.F.R. § 100.75(c)(2);

e.  Expressing to prospective renters or any other persons a limitation on any renter because of familial status, in violation of 24 C.F.R. § 100.75(c)(2);

f.  Providing inaccurate or untrue information about the availability of dwellings for rental because of familial status, in violation of 24 C.F.R. § 100.80(b)(5);

g.  Discriminating in the terms, conditions, or privileges of rental of a dwelling because of familial status, in violation of 24 C.F.R. § 100.65(a);

h.  Restricting the choices of a person by word or conduct in connection with seeking, negotiating for, or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development, in violation of 24 C.F.R. § 100.70(a);

i.  Discouragement from renting a dwelling because of familial status, in violation of 24 C.F.R. § 100.70(c)(1);

j.  Assigning any person to a particular floor of a building because of familial status, in violation of 24 C.F.R. § 100.70(c)(4); and

k.  Making statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status, in violation of 24 C.F.R. § 100.75(a).

**THIRD CLAIM FOR RELIEF**

[California Fair Employment and Housing Act]

*Cal. Gov't Code § 12927 et seq.*

41. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

42. Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

    a. Discrimination and/or harassment because of disability, in violation of Cal. Gov't Code § 12955(a), (d);

    b. Refusal to make reasonable accommodations for people with disabilities, in violation of Cal. Gov't Code § 12927(c)(1);

    c. Discriminatory terms and conditions on the basis of disability, in violation of Cal. Gov't Code § 12927(c)(1);

    d. Making, printing or publishing notices or statements that indicate a preference, limitation, or discrimination based on disability, in violation of Cal. Gov't Code § 12955(c); and

    e. Otherwise making a dwelling unavailable because of disability, in violation of Cal. Gov't Code § 12955(k).

**FOURTH CLAIM FOR RELIEF**

[California Fair Employment and Housing Act]

*Cal. Gov't Code § 12927 et seq.*

(Plaintiff Project Sentinel)

43. Plaintiff Project Sentinel realleges and incorporates by reference each paragraph previously alleged in this complaint.

44. Defendants injured Plaintiff Project Sentinel in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

   a.   Discrimination based on familial status, in violation of Cal. Gov't Code § 12955(c);

   b.   Making statements with respect to the rental of a housing accommodation that indicate any preference, limitation, or discrimination based on familial status, in violation of Cal. Gov't Code § 12955(c); and

   c.   Otherwise making unavailable or denying housing based on discrimination because of familial status, in violation of Cal. Gov't Code § 12955(k).

### FIFTH CLAIM FOR RELIEF

[California Unruh Civil Rights Act]

*Cal. Civ. Code § 51 et seq.*

(Plaintiff James Williams)

45.   Plaintiff James Williams realleges and incorporates by reference each paragraph previously alleged in this complaint.

46.   Defendants have violated Plaintiff James Williams' right to fair housing under the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*, in that Defendants have discriminated against Plaintiff because of disability in the operation of the subject premises, a business establishment.

47.   Pursuant to the Unruh Civil Rights Act, Plaintiff James Williams is entitled to statutory damages, among other remedies, of up to three times his actual damages, but no less than $4,000, as determined by the trier of fact.

### SIXTH CLAIM FOR RELIEF

[Negligence]

*Cal. Civ. Code § 1714*

48.   Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

49.   Defendants owed Plaintiffs a duty to operate Suncrest Apartments in a manner that was free from unlawful discrimination and in accordance with the standards of care for the industry. Defendants negligently violated that duty. Defendants' breach of that duty was the result of

negligence, including but not limited to:

    a.    Defendants' negligent failure to train their employees and themselves regarding the requirements of state and federal fair housing laws;

    b.    Defendants' negligent failure to hire persons who were familiar with the requirements of state and federal fair housing laws;

    c.    Defendants' negligent failure to supervise their employees regarding compliance with the requirements of state and federal fair housing laws;

    d.    Defendants' negligent failure to discipline or terminate employees who failed to comply with the requirements of state and federal fair housing laws; and

    e.    Defendants' negligent failure to operate Suncrest Apartments in accordance with the standard of care for the industry.

**SEVENTH CLAIM FOR RELIEF**

[Unfair Business Practices]

*Cal. Bus. & Prof. Code § 17200 et seq.*

50. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

51. In acting as alleged herein, Defendants have engaged in a pattern or practice of unlawful discrimination in the operation of Suncrest Apartments, which is a business establishment, and therefore have engaged in acts of unfair competition as the term is defined in section 17200 of the California Business and Professions Code.

52. In bringing this action for relief, Plaintiffs are acting in the interest of themselves and the general public pursuant to section 17204 of the California Business and Professions Code.

**RELIEF**

Wherefore, Plaintiffs pray that the Court:

    a.    Permanently enjoin Defendants from engaging in discriminatory housing practices, either directly or through others;

b. Order Defendants to take appropriate affirmative actions to ensure that the activities complained of above are not engaged in by them again;

c. Declare that Defendants have violated the provisions of applicable federal and state laws;

d. Award compensatory damages and punitive damages to Plaintiffs Project Sentinel and James Williams according to proof;

e. Award statutory damages of three times the actual damages but no less than $4,000 under the Unruh Civil Rights Act to Plaintiff James Williams;

f. Order Defendants to develop, implement, and distribute to all current and prospective tenants in all housing accommodations Defendants own and/or manage, a policy prohibiting discrimination on the basis of disability, which includes specific procedures for requesting and receiving reasonable accommodations/modifications and for reporting discrimination, within ninety (90) days after entry of judgment;

g. Order Defendants to add language to all advertisements for rentals at properties owned and/or managed by Defendants that Defendants are Equal Housing Opportunity Providers;

h. Direct Defendants and those operating or managing housing on Defendants' behalf to arrange for and attend, at Defendants' expense, training regarding fair housing obligations of housing providers under applicable law;

i. Grant costs of suit and reasonable attorneys' fees; and

j. Grant all such other relief as the Court deems just.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial.

DATED: June 19, 2017

_____
Julia Campins
Julia@campinsbenhambaker.com
Attorney for JAMES WILLIAMS

_____
Jessica Tankersley Sparks
jsparks@housing.org
Attorney for PROJECT SENTINEL

- 17 -
*James Williams and Project Sentinel v. Northern Suncrest Apartments, LLC et al.*
COMPLAINT